Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** EVIDENTIARY RULING
At the hearing before the Full Commission, plaintiff offered into evidence 3 pages of physical therapy notes which are hereby admitted into evidence and added to defendants' Exhibit 1 of Dr. David P. Fedder's deposition. Defendants' Exhibits 2 and 3 are hereby admitted into evidence and added to the hearing transcript.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on 21 March 2000, and is incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case; the parties are properly before the Commission and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Business Insurance Company was the carrier on the risk at all relevant times.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Based upon the Form 22, plaintiff's average weekly wage was $517.79, which yields a compensation rate of $345.21 per week.
5. The parties stipulated the following documents into the record:
a. Exhibit 1, Form 22;
b. Exhibit 2, Medical Records, 6 pages; and
c. Exhibit 3, Recorded Statement, 7 pages.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 31 years old and had been employed by defendant-employer for 2 1/2 years.
2. Plaintiff is a native of Mexico but has been in the United States with his wife and three children since approximately 1990. Plaintiff speaks some English, but he does not read English. He needed a translator at the hearing and when seeking medical treatment.
3. Plaintiff's employment with defendant-employer was primarily in the boarding department. A bin of socks would be provided to plaintiff. Plaintiff would place single socks on iron foot forms which then moved through a pressing machine. As socks come through the pressing machine they are removed from the forms mechanically. As the pressed socks accumulate, plaintiff collects the socks in groups of twelve and places them on a board. Plaintiff normally handled more than four hundred dozen socks per shift, which was termed "excellent" production by his supervisor. On days when there was no boarding work to perform, plaintiff moved bins of socks from washers to dryers.
4. On 10 May 1999, plaintiff was working in the boarding department. Approximately halfway through his eight hour shift, plaintiff bent down to pick up a bundle of socks from a box and felt a pinch in his lower back. He continued to work, and approximately ten minutes later he began to feel some pain. Plaintiff approached Ms. Smith, explained that he had hurt his back while bending over to pick up some socks, and asked her if she could fill out a form so he could obtain some pills for the pain. Ms. Smith directed plaintiff to a machine that sold aspirin. Plaintiff took some medication and finished out his shift.
5. As plaintiff drove home after his shift, he began to feel numbness in his right leg, and the pain in his lower back continued. Plaintiff was unable to sleep that night. The next day, 11 May 1999, plaintiff had his brother-in-law drive him to work. Upon his arrival, plaintiff told the boarding department manager, Regina McCrea, of his condition and she told him to seek medical attention.
6. Plaintiff presented to Montgomery County Memorial Hospital Emergency Room on 11 May 1999 with complaints of low back pain starting the previous day. The pain was in plaintiff's right paralumbar area radiating down the right leg through the knee. Plaintiff reported that the pain worsened after he got up and went to work that morning. Plaintiff was prescribed Vicoprofen and Valium for two days, and bed rest with activity as tolerated was recommended. Plaintiff was advised to follow up with his primary doctor if his condition did not improve. Plaintiff was diagnosed with right sciatica. Plaintiff returned to the emergency room on 13 May 1999 and was given additional medication.
7. On 17 May 1999, plaintiff presented to orthopedic surgeon Dr. David P. Fedder. Plaintiff gave a history of lower back and right leg pain. Dr. Fedder diagnosed sciatica in the right lower extremity, and prescribed medication and physical therapy. Dr. Fedder scheduled plaintiff to return the next week. Dr. Fedder planned to schedule lumbar imaging and an MRI if no improvement was shown. He gave plaintiff an out of work note until the next appointment.
8. Plaintiff returned to Dr. Fedder on 26 May 1999. Plaintiff continued to experience pain in his lower back and right leg, and an MRI was scheduled for 27 May 1999. Plaintiff was again written out of work until the next appointment.
9. Plaintiff presented to Dr. Fedder on 9 June 1999 with the MRI results. The MRI showed some significant disc bulging at L3-4 and 4-5. Plaintiff continued complaining of lower back and right leg pain. Dr. Fedder scheduled an epidural steroid injection for 1 July 1999, and continued plaintiff out of work until he was reevaluated following that procedure.
10. Plaintiff had a pre-existing back condition which did not prevent him from working. Plaintiff sought medical treatment in December 1996 for back pain. On 6 December 1996, plaintiff underwent an MRI of his lumbar spine which showed a small right paracentral disk at L3-4. Nerve conduction studies conducted that same day on plaintiff's right leg were normal. At his 16 January 1997 visit to Montgomery Memorial Hospital for follow-up treatment plaintiff continued to complain of pain mostly in the central and right lower back. Dr. Bruce Solomon did not believe there was any urgent need for surgical intervention and he did not prescribe further medication. There is no evidence that plaintiff required medical treatment for back pain after 16 January 1997.
11. Dr. Fedder viewed an MRI which was performed on 6 December 1996 which showed basically the same condition as was evidenced in the 27 May 1999 MRI. Both MRI's showed that the discs at L4-5 and L5-S1 were arthritic. Dr. Fedder was of the opinion that plaintiff's arthritic condition took some time to develop and would not be related to an injury sustained during the course of working for defendant-employer. Both MRI's also showed that plaintiff had bulging discs which Dr. Fedder stated could be the cause of plaintiff's pain. Further, Dr. Fedder opined that if a bulging disc hits a nerve, it could cause pain radiating down the leg along the nerve. Dr. Fedder also opined that while it was virtually impossible that plaintiff's disc condition was caused by a work injury, a twisting or lifting injury at work could have exacerbated the pre-existing condition.
12. There is no evidence in Dr. Fedder's notes that plaintiff described a work-related incident that gave rise to his injury; however, the 19 May 1999 physical therapy notes indicate that plaintiff gave a history of injuring his right lower back while lifting at work and further reported that there was a gradual onset of severe right hip pain over the next week. The physical therapy notes dated 24 May 1999 indicate that plaintiff continued to have pain in his lower back radiating down now to both legs, greater on the right, and the therapist noted that plaintiff had difficulty understanding English.
13. Plaintiff never returned to Dr. Fedder for additional evaluation, nor did he undergo the epidural block scheduled for 1 July 1999. Plaintiff stated that he was unable to continue treatment because he had no money to pay for it. Due to plaintiff's failure to undergo the treatment prescribed by Dr. Fedder and submit to the planned reevaluation of his condition, the Full Commission finds that there is insufficient medical evidence in the record to determine whether plaintiff remains disabled and cannot return to work.
14. Plaintiff gave defendant-carrier a recorded statement on 1 June 1999. There is no mention by plaintiff regarding the specific incident causing injury to his back, but he does make it clear that the injury occurred at work during his shift at approximately 8:00 on 10 May 1999. The Full Commission finds that due to the language barrier faced by plaintiff in attempting to convey his history to non-Spanish speaking persons, the absence of specific facts is likely due to a lack of understanding on both sides of the information sought. Accordingly, plaintiff's supposed failure to relate his condition to his employer and some subsequent medical provider as a specific traumatic incident at work is not indicative of a lack of credibility on the part of plaintiff.
15. On or about 28 May 1999, Edith Smith signed a written statement to ostensibly document her recollection of events concerning plaintiff's reported injury dating back to 8 May 1999. Comparing Ms. Smith's language usage at the hearing to that of the written statement it is unlikely that Ms. Smith prepared the written statement. According to Ms. Smith's written statement, plaintiff reported side pain on 8 May 1999, and back pain on 10 and 11 May 1999; he reported on 17 May 1999 that he had been to the doctor and needed additional tests, but he thought he might have a slipped disk and when asked on 8 May what did he do at home to hurt his back, plaintiff said he didn't know.
16. At the hearing before the Deputy Commissioner, Edith Smith testified that plaintiff first complained of his side hurting on 7 May 1999, and that his side continued to hurt when he reported for work on 8 May 1999. Ms. Smith's testimony was not entirely consistent with her written statement. In her written statement she did not mention any complaints of side pain on 7 May 1999. Plaintiff denies telling Ms. Smith that he had side pain. No weight is given to Edith Smith's testimony that plaintiff complained of side pain on 7 and 8 May 1999.
17. On or about 28 May 1999, Regina McRae, Boarding Department Manager, prepared a written statement concerning contact with plaintiff on 11 May 1999, According to Ms. McRae, plaintiff exhibited signs of being in back pain and when asked how he hurt his back, he replied that he didn't know.
18. On 10 May 1999, plaintiff suffered an aggravation or exacerbation of a pre-existing condition in his lower back when he reached down to pick up some socks arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned by defendant-employer.
19. As a result of his compensable injury, plaintiff was unable to work and was rendered totally disabled beginning 11 May 1999. However, because plaintiff failed to comply with the prescribed treatment of Dr. Fedder and subsequent reevaluation of his condition, there is insufficient evidence upon which to base an award of continuing temporary total disability beyond 1 July 1999. There is insufficient evidence regarding whether plaintiff has reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 10 May 1999, plaintiff suffered a significant aggravation or exacerbation of a pre-existing condition in his lower back when he reached down to pick up some socks and experienced a pinching pain in his back which increased in intensity and radiated down into his right hip and leg. Plaintiff's injury arose out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned. Accordingly, plaintiff is entitled to indemnity compensation under the Act. N.C. Gen. Stat. § 97-2(6); Morrison v. BurlingtonIndustries, 304 N.C. 1, 282 S.E.2d 458 (1981).
2. As a result of his compensable injury, plaintiff was unable to work and was rendered totally disabled. However, because plaintiff failed to comply with the prescribed treatment of Dr. Fedder and subsequent reevaluation of his condition, there is insufficient evidence upon which to base an award of continuing temporary total disability beyond 1 July 1999. Accordingly, plaintiff is entitled to temporary total disability compensation beginning on 11 May 1999 and continuing through 1 July 1999. The issue of plaintiff's entitlement to further total disability compensation is hereby reserved pending further evaluation of plaintiff following his compliance with the treatment prescribed by Dr. Fedder. N.C. Gen. Stat. § 97-29.
3. There is sufficient evidence of record to support the conclusion that plaintiff notified his immediate supervisor, Edith Smith, of his injury on the same date that it occurred. There is no evidence that plaintiff has ever contradicted his claim that the injury occurred at approximately 8:00 p.m. on 10 May 1999 during his shift with defendant-employer. Any confusion regarding the exact activity in which plaintiff was engaged at the time of his injury is adequately explained by the language barrier between plaintiff and those attempting to elicit information from him. Accordingly, defendants have not been prejudiced by a delay of written notice regarding plaintiff's claim for compensation under the Act. N.C. Gen. Stat. § 97-22.
4. Plaintiff is entitled to have defendants pay for all past medical treatment and any treatment required in the future which is related to his compensable injury and which would lessen the period of disability or effect a cure for his injury, subject to the limitations contained in the statutes. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the amount of $345.21 per week beginning on 11 May 1999 and continuing through 1 July 1999. This compensation has accrued as of the date of this Award and shall be paid to plaintiff in a lump sum, subject to attorney's fees approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable injury.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the amount due plaintiff in Paragraph 1 above. Accordingly, one fourth of the lump sum due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
5. The issue of plaintiff's entitlement to further total disability compensation after 1 July 1999 is hereby reserved pending further medical evaluation of plaintiff's condition at defendants' expense.
This the ___ day of November, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER